CUMMINGS, Circuit Judge.
 

 Shirley J. Holland (“Shirley”) was convicted of conspiracy to defraud the Internal Revenue Service (“IRS”), tax evasion, failure to file tax i'eturns, conspiracy to commit bankruptcy fraud and money laundering, bankruptcy fraud and money laundering. After a jury trial, she was committed to 27 months’ imprisonment and two years of supervised release, and ordered to pay $1,250 in special assessments, a $6,000 fine, $5,836 in investigative costs and to forfeit $50,706.14. Her husband, Francis Joe Holland (“Joe”), was similarly charged and like Shirley was found guilty by a jury. Joe was ordered to serve 80 months’ imprisonment, to pay a $50,000 fine and to forfeit $50,706.14. Shirley and Joe timely appealed but Joe died while then-appeal was pending. In accordance with
 
 United States v. Klein,
 
 247 F.2d 908 (2d Cir.1957), the Hollands were charged with a conspiracy to impair the IRS between 1991 and November 1993. She was also charged with various tax offenses.
 
 [1]
 
 The Hollands were also charged with and convicted of conspiracy and bankruptcy fraud (18 U.S.C. §§ 371,152) in connection with the bankruptcy cases of Joe and HEC and convicted of money laundering for having laundered the proceeds of the bankruptcy fraud (18 U.S.C. § 1956). We are concerned here only with Shirley’s appeal.
 

 The Hollands were residents of Boonville, Indiana. Each owned one-half interest in several Indiana corporations, including HEC. Joe served as the president and Shirley served as secretary/treasurer of each corporation. HEC marketed investments in oil and gas wells. Shirley also worked for three sole proprietorships owned by Joe.
 

 For the tax years 1990 through 1992, the Hollands concealed the income-generating activities of their businesses. They deposited checks payable to HEC into Shirley’s personal bank account. Between May and October 1991, they sent cheeks totaling $332,197 to Anthony L. Hargis (“Hargis”), a California warehouse banker who deals in cash and does not provide information to the IRS. He paid the Hollands’ personal and business expenses through checks drawn on bank accounts maintained in his name. He sent the Hollands $71,809 in currency between May 1991 and October 23, 1991, and a total of $87,320 during 1991. During bankruptcy proceedings, the Hollands understated and misrepresented to creditors the income they sent to Hargis. They also encumbered their assets through promissory
 
 *379
 
 notes and mortgages issued through the Christian Common Law Foundation in order to place those assets beyond the reach of the IRS.
 

 On October 23, 1991, Joe filed personal bankruptcy and the corporate bankruptcy of HEC. According to the government, the Hollands transferred and concealed assets in which Joe or HEC had an interest (such as checks, funds and various bank accounts and a vehicle). After Joe and HEC filed for bankruptcy, the Hollands allegedly concealed assets of Joe and HEC from creditors by transferring checks to Hargis. They did not disclose the existence of the accounts maintained by Hargis.
 

 The evidence showed that the Hollands laundered the proceeds of the bankruptcy fraud by directing Hargis to pay their personal and business expenses by cheeks drawn on Hargis’ bank accounts. The checks were of course difficult to trace because they were in Hargis’ name. The Hollands also received cash from Hargis and failed to report it to the IRS and used the money to pay their telemarketers, who had their own accounts with Hargis. According to the evidence, the Hollands made false statements concerning their business affairs and the nature of their activities with Hargis during the bankruptcy proceedings. .
 

 During the 1990 tax year HEC was required to file an income tax return and owed income taxes of $41,431. Shirley did provide expense records to her accountant used to prepare a 1990 HEC return but the return was not filed even though she was required to do so.
 

 Joe and HEC were sued by various investors, resulting in judgments totaling $457,-260.51 against Joe and against HEC. Two days thereafter on October 23,1991, Joe filed for bankruptcy, claiming assets of $1,600 and liabilities of $457,260. He simultaneously filed a corporate bankruptcy petition for HEC claiming the same assets and liabilities.
 

 A jury found both Hollands guilty of all counts, and we affirm her conviction and sentence.
 

 Shirley’s Motion to Dismiss the Indictment
 

 Shirley alleges that the district court should have granted her motion to dismiss the indictment because “Congress lacks the power to criminalize the wilful failure to file a return or pay a tax” (Br.22). We have rejected this argument before,
 
 United States v. Dack,
 
 747 F.2d 1172, 1176 n. 5 (7th Cir.1984), and it need not be belabored here. Shirley’s motion to dismiss the indictment as unconstitutional was properly denied.
 

 Cross-examination of Anthony Hargis and Donald Schmitt
 

 Shirley complains that the court im-permissibly limited the cross-examination of government witness Hargis. However, our study of the transcript shows that Judge Tinder allowed ample testimony with respect to Hargis’ dealings and merely restricted irrelevant testimony. Shirley also argues that the district court improperly limited the cross-examination of IRS tax expert Donald Schmitt. While Joe’s lawyers sought to ask Schmitt about the taxation of mutual fund contributions, the district court ruled that the questions were irrelevant because mutual funds were not analogous to the scenario presented by this case. Such testimony was clearly irrelevant, so there was no abuse of discretion in limiting the cross-examination of this witness.
 
 United States v. Richardson,
 
 130 F.3d 765, 777 (7th Cir.1997), certiorari denied, - U.S. -, 118 S.Ct. 1324, 140 L.Ed.2d 486 (1998).
 

 Denial of Motion for Mistrial
 

 James Greenwell, an IRS agent, spent much time in reviewing the facts involved in this case. In response to a question on cross-examination, he stated “Money laundering works.” Shirley claims that the district court should have granted her motion for mistrial after that comment.
 

 Greenwell had spent a great deal of time in reviewing documents during his investigation of the Hollands. When the questioning by Joe’s counsel, Mr. Brinson, was concluding, the following exchange occurred between him and Greenwell:
 

 
 *380
 
 Q: You spent a lot of time on the Hargis records?
 

 A: Yes, I did. Money laundering works.
 

 Following an objection, the district court struck the phrase and told the jury to disregard it. Thereupon a motion for mistrial was denied and Shirley told the district judge that she did not “want any more instructions to the jury on this” (Tr. 164). However, the court had previously instructed the jury:
 

 if a witness blurts something out and a lawyer objects to it and I strike it from the record, I would tell you to disregard that; you need to put that out of your mind and not consider it in any way. You may not refer to that statement. If it had been blurted out and I struck it, you can’t later refer to that in your deliberations.
 

 Also, the court gave the following final instruction:
 

 You are not to pay any attention to any testimony that was stricken or any statements of counsel with reference to matters of that kind, such as objections, responses to objections or questions to which objections were sustained.
 

 Therefore the jury was adequately told to disregard the three words in question and the error, if any, was harmless.
 
 United States v. Windfelder,
 
 790 F.2d 576, 582 (7th Cir.1986).
 

 Sufficiency of Evidence on Certain Counts
 

 Shirley has only attacked the sufficiency of the evidence as to several bankruptcy fraud and money laundering offenses, choosing not to challenge the sufficiency of the evidence with respect to the tax-related counts. However, the evidence showed that F. Joe Holland & Company was a sole proprietorship that Joe owned and controlled. The 28 checks specified in Count 11 were all made payable to this company and were deposited in Joe’s account between August and October 1991. Shirley notarized Joe’s endorsement on the 28 checks. This evidence showed that the checks and funds specified in Counts 11 and 12 were assets of Joe as asserted by the government. There was also ample evidence that the 28 checks sent to Hargis were transferred and concealed as found by the jury.
 

 Transfer of HEC’s Assets
 

 The indictment charged that the Hollands fraudulently transferred a recreational vehicle owned by HEC in contemplation of HEC’s bankruptcy. Shirley complains that the jury could not have reasonably found that the vehicle was fraudulently transferred. In August 1991 HEC purchased this vehicle through an account of Joe maintained by Hargis. A few days after Joe had discussions with a bankruptcy lawyer for HEC about taking it into bankruptcy, HEC transferred the vehicle to Shirley without telling the bankruptcy lawyer. Also, Joe did not disclose the existence of the vehicle or its transfer to Shirley when he filed the bankruptcy schedules for HEC. The evidence permitted the jury to find that the Hollands fraudulently transferred the vehicle to Shirley in contemplation of HEC’s bankruptcy filing.
 

 The indictment charged that the Hollands fraudulently concealed five checks payable to HEC and sent to Hargis for deposit in his account. The checks, which were part of the assets of the HEC bankruptcy estate, were deposited with Hargis after its bankruptcy. Clearly they were concealed assets of HEC.
 

 The Hollands were convicted of 12 counts of money laundering in violation of 18 U.S.C. § 1956. The Hollands concealed these proceeds of bankruptcy fraud by endorsing checks from the investors in F. Joe Holland & Company to Hargis. He paid the Hollands’ bills with checks drawn on various Hargis bank accounts. The original source of the funds was thus concealed from their creditors. The evidence amply supported the jury’s finding that the Hollands committed money laundering as charged in the indictment. Since there was ample evidence for the jury to find that Shirley engaged in money laundering, her attack on the criminal forfeiture count is baseless. The judgment of forfeiture in the amount of $50,706.14 was amply justified by the record.
 

 Loss for Which Shirley Is Responsible
 

 The loss for which Shirley is responsible under U.S.S.G. § 2F1.1 was $454,000, consisting of the default judgments sought to
 
 *381
 
 be discharged by Joe and HEC by filing for bankruptcy. Shirley submits that the loss for which she was responsible was only $32,-284.07, which was the balance in a bank account maintained by Joe when the bankruptcy petitions were filed. The petitions to commence the bankruptcy proceedings were filed on October 23, 1991, two days after default judgments totaling $454,000 had been entered in a pending lawsuit against Joe and HEC. In imposing sentence, the district judge found that the acts of bankruptcy fraud were an attempt to conceal Joe’s and HEC’s assets in order to obtain a discharge of $454,000 in default judgments held by creditors of Joe and HEC. Since the evidence showed that the acts of bankruptcy fraud were committed to obtain a discharge of the $454,000 in default judgments, the district judge was justified in finding that the loss was $454,000, thus increasing the offense level pursuant to U.S. Sentencing Guidelines § 2Fl.l(b)(l)(J). Shirley’s reliance on
 
 United States v. Gunderson,
 
 55 F.3d 1328, 1331 (7th Cir.1995), is misplaced, because the court in that case explicitly refused to choose between the prosecution’s and defendant’s methods of calculating intended loss. The Hollands’ failure to disclose the assets of the bankruptcy estate was motivated to obtain a discharge of $454,000 owed to Joe’s and HEC’s creditors. Consequently that is the intended loss.
 

 Effect of Joe’s Death
 

 Because of Joe’s death, his appeal and the indictment against him were ultimately dismissed. The evidence of his death does not vitiate his guilt, nor Shirley’s. The jury properly found that Shirley conspired with Joe as charged in the indictment.
 

 Conviction and sentence affirmed.
 

 [1]
 

 . The offenses included evasion of corporate income tax of Holland Energy Company, Inc. ("HEC”) for 1990, failure to file a corporate income tax return for HEC for 1990, and failure to file her 1991 individual tax return.