In the

# United States Court of Appeals
## For the Seventh Circuit

No. 01-3488

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

PRECIOUS THERÉSE FEARMAN,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Indiana, South Bend Division.
No. 00 CR 58—**Robert L. Miller, Jr.,** *Judge.*

SUBMITTED JUNE 27, 2002—DECIDED JULY 25, 2002

Before POSNER, KANNE, and EVANS, *Circuit Judges.*

POSNER, *Circuit Judge.* Precious Therése Fearman appeals from a ten-month sentence for bankruptcy fraud. The district judge had raised her offense level by four steps on the basis of his finding that she had intended to inflict a loss on a creditor of between $20,000 and $40,000. U.S.S.G. § 2F1.1(b)(1)(E). (The punishment for fraud is based on either the actual or the intended loss, whichever is greater. U.S.S.G. § 2F1.1, Application Note 8. The judge thought the actual loss zero, as we'll see.) Had Fearman intended a smaller loss, her maximum sentence would have been

shorter—might have been as short as six months (if the intended loss was zero—and it may have been, as we'll also see), in which event the judge would not have been required to impose any prison sentence, as he was required to do if his calculation of the intended loss was correct. See U.S.S.G. §§ 5C1.1(b), (d).

Fearman's husband owned a building in South Bend on which there was a mortgage. He defaulted and the mortgagee obtained a judgment of foreclosure. A sheriff's sale of the building was scheduled for April 27, 2000, which happened to be a week after the original mortgagee had assigned the mortgage to EMC Mortgage Corporation. EMC, which was owed $47,000 on the mortgage, planned to bid $37,000 for the building at the sale. Fearman thwarted the sale by faxing the sheriff's office, on the morning of April 27, a forged "notice of automatic stay," which falsely represented that her husband had filed for bankruptcy and that the automatic stay of creditors' suits against a debtor in bankruptcy was in effect. Not knowing the notice was bogus, the sheriff canceled the sale. It was rescheduled for June 22. In May, EMC discovered that the building had numerous violations of the building code and that a hearing to demolish it had been scheduled. After investigating, EMC concluded that it would cost more to bring the building up to code than it was worth. The foreclosure sale was canceled, the building was demolished, and EMC wrote off the debt.

As of April 27, the district judge correctly found, the building was worthless. But he decided that since EMC had been planning to bid $37,000 for it (not in cash, presumably, as that would mean that EMC was paying itself, but in exchange for discharging the mortgage), this was the amount of the loss that Fearman intended to cause EMC.

We do not agree with this approach to calculating the intended loss. EMC had no interest in the building as such. Its interest was in collecting as much of the $47,000 it was owed as it could. After the thwarted foreclosure, Fearman's husband still owed EMC $47,000. Indeed, if the foreclosure sale had been conducted as planned and EMC had walked away with title to the property, Fearman's husband would have owed EMC only $10,000, the remaining debt after the discharge of the mortgage; because the foreclosure was thwarted, he remained indebted to EMC for the full $47,000. Since EMC probably had little prospect of collecting a deficiency judgment from him and so would have wanted to foreclose as soon as possible, it probably thought it would be worse off if the foreclosure sale was delayed—but how much worse off and, more to the point, how much worse off Fearman thought she was making EMC are questions unrelated to EMC's $37,000 bid.

And if Fearman believed the building was worthless on April 27, then it is difficult to see how EMC was hurt by the delay in foreclosing on it. Neither EMC's estimate of the value on that date, nor the actual value (zero, which the judge thought the actual as distinct from the intended loss caused EMC by Fearman's fraud), matters; the relevant understanding of values for purposes of determining intended loss under the sentencing guidelines is that of the criminal, not that of the victim. *United States v. Yeaman*, 194 F.3d 442, 460 (3d Cir. 1999); see also, e.g., *United States v. Lorefice*, 192 F.3d 647, 655 (7th Cir. 1999); *United States v. Wade*, 266 F.3d 574, 586 (6th Cir. 2001). The judge considered that possibility but rejected it on the ground that had Fearman thought the building worthless she would not have bothered to prevent its sale to EMC. That is a sensible inference, but leaves unanswered what Fearman thought the building was worth or how her opinion of its worth

would have translated into an intended loss to EMC. Could she have thought that she could stave off foreclosure indefinitely? Or that a later foreclosure would produce a higher sale price, thus reducing the amount of the deficiency judgment that EMC could obtain against her husband?

Well, suppose she did think these things. Or even suppose, contrary to our earlier analysis, that Fearman's valuation of the building was the amount of the loss she intended to inflict on EMC; no matter; for there was no basis for the judge's finding that she thought the building worth at least $20,000 (let alone $37,000). She knew it was encrusted with violations of the building code and she knew the significance of such violations—the judge credited the statement by a city official that no landlords in South Bend had more building-code violations than Fearman and her husband. True, the demolition hearing had not yet been scheduled on April 27, which is the relevant date for determining the intended loss because it was the date of the fraud. *United States v. Nichols*, 229 F.3d 975, 979 (10th Cir. 2000); *United States v. Janusz*, 135 F.3d 1319, 1324 (10th Cir. 1998); *United States v. Wells*, 127 F.3d 739, 746 (8th Cir. 1997); cf. *United States v. Lorefice, supra*, 192 F.3d at 655. But it was only a few weeks later that EMC discovered that the property was worthless, and Fearman doubtless had a better idea of its value than EMC did (the record does not disclose what EMC paid for the assignment of the mortgage to it). It is unlikely therefore that she thought the property worth more than a few thousand dollars on April 27, in which event the increase in her sentence was improper regardless of principles of secured-transactions law. We are therefore constrained to vacate the sentence and remand the case for resentencing.

What benefit Fearman thought she or her husband was obtaining from preventing the sale of the building is obscure, even if the building was worth something, since EMC was owed some $47,000 and would get the building eventually. Maybe there was rental income coming in. In any event an intended loss is not only not an actual loss; it is not a realistically expectable loss either. *United States v. Coffman*, 94 F.3d 330, 336-37 (7th Cir. 1996). But it must exist at least in the defendant's mind.

VACATED AND REMANDED.

A true Copy:

      Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*