# In the
# United States Court of Appeals
## For the Seventh Circuit

_____

No. 03-1116

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

ERNESTO MUTUC,

*Defendant-Appellant.*

_____

**Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 01 CR 405—David H. Coar**, *Judge.*

_____

ARGUED SEPTEMBER 19, 2003—NOVEMBER 21, 2003

_____

Before BAUER, RIPPLE, WILLIAMS, *Circuit Judges.*

BAUER, *Circuit Judge.* Defendant-Appellant Ernesto Mutuc appeals his conviction and resulting sentence for having committed bankruptcy fraud. He argues ineffective assistance of counsel, failure to properly instruct the jury, and an erroneous sentence calculation. We affirm Mutuc's conviction and sentence.

## I. BACKGROUND

In 1994, Mutuc's marriage ended in divorce. Under the divorce decree, Mutuc's former wife, Julie Kanealy, received

alimony, child support, the marital domicile, and the funds within Mutuc's 401(k). The 401(k) funds, approximately $36,000 as of May 2, 1994, were to be used in paying the marital debts. Kanealy failed to pay the creditors.

The divorce proceedings also provided for reciprocal releases and indemnity agreements for the spousal debts occurring after October 1, 1992. Nevertheless, in 1998 James B. Pritikin, Kanealy's divorce attorney, obtained a judgment for attorney's fees against Mutuc for $9,812.50. Shortly thereafter, Mutuc filed for bankruptcy, represented by attorney George Jonscher.

Mutuc, through Jonscher, filed a Chapter 7 bankruptcy petition in the Northern District of Illinois on April 4, 1998. Mutuc stated that his total secured debt amounted to $51,427, his monthly income was $1,560.28, and his monthly expenses were $3,463.70. More importantly, Mutuc claimed that he owned no real estate, had a limited number of stock options from his former employer, and had a checking account with Mid-Town Bank with a balance of zero. He also claimed his money market account at Northern Trust was closed in November of 1997 when he gave the final balance of $15,914.43 to his sister.

Essentially, Mutuc claimed that he had no assets or money to satisfy debts that equaled approximately $80,000. The bankruptcy court granted Mutuc a discharge of his debts. It later became apparent that much of this information was false.

Mutuc's stated reason for filing for bankruptcy was to force his ex-wife to pay the marital debts. In doing so, he badly misrepresented his net worth. The facts show, among other things, that Mutuc concealed various bank accounts and stock options, that he concealed his ownership of real property and failed to disclose the transaction in which he obtained the property, and that he misrepresented his gross

income. Many of these false statements were made in documents filed in the bankruptcy court and others given orally while under oath.

At some point during an August 27, 1998 deposition regarding the dischargeability of Pritikin's attorney's fees, Mutuc admitted to being the true owner of the real property mentioned above. Pritikin then informed the office of the United States Attorney that Mutuc had committed bankruptcy fraud.

The government charged Mutuc with one count of filing a bankruptcy petition in furtherance of a scheme to defraud, 18 U.S.C. § 157; two counts of making false statements, under penalty of perjury, 18 U.S.C. § 152(3); and one count of making a false oath or account in a bankruptcy case, 18 U.S.C. § 152(2). After a six day jury trial, Mutuc was found guilty as charged and sentenced to twenty three months' imprisonment, three years' supervised release, and fined $4,000. This appeal followed.

## II.  DISCUSSION

### A.  Ineffective Assistance of Counsel

Mutuc takes issue with the representation he received during the divorce proceedings and bankruptcy proceedings, by attorney Jonscher, and the criminal trial, by attorney James Fennerty.

In an attempt to show ineffective assistance of counsel, Mutuc points to Jonscher's representation during the bankruptcy proceedings. Jonscher was not Mutuc's attorney for the criminal proceedings and there is no constitutional right to a competent attorney in civil proceedings.

Mutuc also argues that Fennerty, his trial counsel, was ineffective; that Fennerty's weak grasp of bankruptcy law made him incompetent to deal with the issues in the crim-

inal case. Specifically, he points to Fennerty's examination of Jonscher, his failure to secure a particular jury instruction, his poor relationship with Mutuc, and his failure to file motions *in limine* or to object to certain evidence introduced by the government as demonstrations of incompetency.

Mutuc claims that Fennerty's examination of Jonscher was "lacking" and that he was incompetent to deal with the various bankruptcy issues involved in the criminal case. On the contrary, Fennerty's examination elicited responses that tended to show that Jonscher either was intimately familiar, or should have been intimately familiar, with Mutuc's assets. He brought out the fact that Jonscher was not a regular bankruptcy attorney and that he filed only a few bankruptcy cases a year. He brought out that Jonscher was aware of certain assets in which Mutuc had an interest that were not mentioned in the bankruptcy proceedings. Finally, he noted that Jonscher was receiving only a small fee for his work related to the bankruptcy proceedings. In short, Fennerty's examination of Jonscher supported the defense's theory of the case. The examination arguably centered on showing Jonscher's failure to properly guide Mutuc, a reasonable trial strategy when taken as support for Mutuc's argument that he relied on the advice of Jonscher when filing for bankruptcy. The examination did not fall below the objective standard of reasonableness as set out in *Strickland. Strickland v. Washington*, 466 U.S. 668, 688 (1984).

As to Fennerty's failure to obtain the "good faith" jury instruction, a defendant "is not entitled to a specific good faith instruction . . . so long as, considering the instructions as a whole, the jury was adequately instructed upon his theory of defense." *United States v. Given*, 164 F.3d 389, 394 (7th Cir. 1999). Here, the jury had to find that Mutuc had an intent to defraud. It is self-evident that one with an intent to defraud does not act in good faith.

The irreconcilable differences between Mutuc and Fennerty do not support a finding of ineffective assistance of counsel. The Sixth Amendment does not guarantee a friendly and happy attorney-client relationship. *Morris v. Slappy*, 461 U.S. 1, 14 (1983). The fact that Fennerty and Mutuc did not get along does not translate into an inability of Fennerty to zealously defend his client; it does not mean that "the objectives of representation could not be fulfilled." (Br. of Def-Appellant at 25.) Mutual admiration societies are not constitutional guarantees and conclusory statements that Fennerty "took a dive" shows antagonism toward the lawyer but, without more, does not show antagonism from the lawyer toward the client.

Mutuc also points to his trial counsel's failure to file motions *in limine* in order to bar the introduction of what he claims was expert testimony as further examples of ineffective assistance of trial counsel. Assuming *arguendo* that the evidence was expert testimony, the claim still fails to meet the prejudice prong of *Strickland*.

It is clear that, if required, the two witnesses would have been qualified as experts in their fields under Federal Rule of Evidence 702. The first witness merely explained a business record generated by her department at the defendant's former place of employment. The second witness, Pritikin, an experienced divorce attorney, essentially explained the nuances of divorce proceedings. The complained-of evidence was relevant and not overly prejudicial. Therefore, filing a motion to exclude such expert testimony would have been fruitless.

Moreover, the Tenth Circuit has said "[c]onsidering that a motion *in limine* is sought to aid counsel in formulating his trial strategy, the decision regarding whether to file such a motion is clearly part of the process of establishing trial strategy." *Jones v. Stotts*, 59 F.3d 143, 146 (10th Cir. 1995). Because there is a strong presumption that strategy

decisions are sound and Mutuc offers nothing to overcome this presumption, his argument fails the performance prong of *Strickland* as well. *Strickland*, 466 U.S. at 690.

Finally, Mutuc argues that trial counsel should have objected to witness Pritikin's testimony regarding divorce fraud. The simple fact is that he did object and the objection was sustained.

In summary, none of the arguments forwarded by Mutuc warrant any remedy. As explained in detail by the above discussion, the defendant's right to effective assistance of counsel was not violated.

## B. Failure to Properly Instruct The Jury

Mutuc claims that the trial court erred by refusing to instruct the jury on "good faith." As the government correctly asserts, it is unclear whether the defendant takes issue with a failure to give: 1) the tendered instruction, 2) the *Cheek* instruction[1], or 3) a good-faith reliance on advice-of-counsel instruction. Nevertheless, defendant was not entitled to any of them.

A district court's refusal to give a tendered theory of defense jury instruction is reviewed de novo. *United States v. Irorere*, 228 F.3d 816, 825 (7th Cir. 2000). Where there is no objection raised to a refusal to give a particular instruction we review for plain error only. *Id*. Where an instruction has not been tendered, we likewise review for plain error.

A defendant is entitled to have the jury consider any theory of defense supported by law and evidence. *United States v. Kelley*, 864 F.2d 569, 572 (7th Cir. 1989). However, this does not mean that a defendant is entitled to any

---

[1] An instruction dealing with tax cases where willfulness is at issue. *United States v. Cheek*, 3 F.3d 1057, 1063 (7th Cir. 1993).

particular jury instruction. To be entitled to a particular theory of defense instruction, the defendant must show the following: 1) the instruction is a correct statement of the law, 2) the evidence in the case supports the theory of defense, 3) that theory is not already part of the charge, and 4) a failure to provide the instruction would deny a fair trial. *United States v. Chavin*, 316 F.3d 666, 670 (7th Cir. 2002).

The only instruction which was formally tendered to the court was entitled, "Good Faith" and comes from the Federal Criminal Jury Instructions of the Seventh Circuit section 6.10. Mutuc's submitted instruction reads as follows:

> Good faith on the part of the defendant is inconsistent with intent to defraud, an element of Count 1 of the indictment. The burden is not on the defendant to prove his good faith; rather, the government must prove beyond a reasonable doubt that the defendant acted with intent to defraud.

(R. on Appeal at 43.)

The district court refused to give the instruction to the jury, noting that good faith was a "straw man." The judge continued:

> You erect the straw man good faith and then you say, "The burden is not on us to prove the straw man." The burden is on the government—I will instruct the jury that the burden is on the government to show intent to defraud.

(Tr. 671.)

Clearly, the district court believed, as do we, that the gist of the proposed instruction was already part of the charge.

The instructions that were ultimately given to the jury uniformly required the jury to find that the defendant com-

mitted the relevant acts "knowingly" and "fraudulently." (Tr. 866-68.) The instructions defined "fraudulently" as an act "done with intent to deceive . . . ." (Tr. 869.) Both common sense and common law require us to find that "an action taken in good faith is on the other side of an action taken knowingly." *United States v. Koster*, 163 F.3d 1008, 1012 (7th Cir. 1998). In other words, it is impossible to intend to deceive while simultaneously acting in good faith.

Mutuc also argues that he was entitled to the *Cheek* instruction, found at section 6.11 of the Federal Criminal Jury Instructions of the Seventh Circuit. This instruction was never formally tendered and is inappropriate for bankruptcy fraud cases. It clearly does not apply to Mutuc's case.

Mutuc seeks a new trial because the jury was not given a good-faith reliance on counsel instruction. He characterizes the instruction as one which "charges the jury that a defendant may be found not guilty if the jury believes that [the defendant] acted in good faith reliance on the advice of his attorney." (Br. of Def.-Appellant at 26.) It is clear that the requested instruction, which was never tendered to the court, was inappropriate. Assuming *arguendo* that Jonscher told Mutuc to lie under oath, this advise cannot support a defense to perjury. The instructions tendered to the jury treated the issues fairly and accurately and they will not be disturbed on appeal. *United States v. Cheek*, 3 F.3d 1057, 1064 (7th Cir. 1993), (citing *United States v. Thibodeaux*, 758 F.2d 199, 202 (7th Cir. 1985)).

## C. Adjustment for Intended Loss

Mutuc argues that the trial court erred by enhancing his sentence under United States Sentencing Guideline § 2B1.1. He claims that the loss should be calculated at zero dollars because he intended to force his former wife to pay

the debt, as was required by their divorce and because, he says, he intended no loss be visited upon his creditors. The argument is unpersuasive.

A district court's calculation of the intended loss is reviewed for clear error. *United States v. Smith*, 332 F.3d 455, 457 (7th Cir. 2003). The application of that fact to the Sentencing Guideline is then reviewed de novo. *Id*.

Under U.S.S.G. § 2B1.1(b) loss is to be calculated as the greater of "actual loss" or "intended loss." U.S.S.G. § 2B1.1, application Note 2(A). This court has held that the proper loss calculation in bankruptcy fraud cases is the amount of the debt that the defendant sought to discharge in bankruptcy. *United States v. Holland*, 160 F.3d 377, 381 (7th Cir. 1998).

Defendant argues that "the relevant understanding of values for the purposes of determining the intended loss under the sentencing guidelines is that of the criminal, not that of the victim." (Br. of Def.-Appellant at 35-36) (quoting *United States v. Fearman*, 297 F.3d 660, 661 (7th Cir. 2002). We agree with defendant that his state of mind is the relevant benchmark. He states that his "intention was to force his ex-wife to honor the marital settlement agreement, reduced to judgment in the divorce court, obligating her to pay the marital debts as agreed and ordered by the divorce court." But the facts show that Mutuc filed for bankruptcy in order to discharge a debt of more than $30,000 and less than $70,000. It is undisputed that he intended to leave the creditors with the false impression that he had insufficient funds to pay his debts. A successful discharge in bankruptcy would have left the creditors without recourse against Mutuc; it follows that Mutuc intended a loss equal to the amount to be discharged in bankruptcy. While Mutuc may have intended that his creditors be paid, his overall intent was that he would not be the one to pay. The adjustment will stand.

### D. Adjustment for Perjury

Defendant asks that the two-level adjustment under U.S.S.G. § 3C1.1 for perjury be vacated. He says that the government failed to abide by the district court's standing order governing objections to the presentence investigation report and the district court failed to specify particular instances of perjury. Neither of these arguments are bourne out by the record.

The first portion of Mutuc's argument complains that the government failed "to abide by the District Court's standing order requiring the Defendant to be provided notice of what statements would be used against him." (Reply Br. of Appellant at 13.)

In an order entitled, "Order Governing Objections to the Presentence Investigation Report and Motions for Departure from the Sentencing Range Under the Guidelines," the district court imposed the following requirements:

> As to any factual matters contained in the presentence report which are disputed, the party who objects to the facts as contained in the report shall file a written objection/correction . . . . A copy of the objection/correction shall be served on opposing counsel and the defendant.

(R. on Appeal at 50.) A similar instruction was given for objections to the calculations made by the probation officer. The government filed no objection/correction to the presentence investigation report's treatment of the obstruction of justice enhancement.

The presentence investigation report, in relevant part, says:

> This officer was not present at court during trial and therefore, cannot determine whether the defendant

willfully provided false testimony to constitute "material" matter that, if believed, would tend to influence or affect the issue under determination. In addition, this officer has not reviewed a copy of the transcript of the defendant's testimony. Therefore, the probation department does not have sufficient information to determine whether defendant gave false testimony and whether that testimony would meet the criteria for obstruction of justice, pursuant to § 3C1.1. Therefore, this officer will defer to the Court's interpretation of the defendant's testimony to determine whether the two-level enhancement is applicable.

(R. on Appeal 83.)

From the two passages above, it is clear that the government did not violate the standing order of the district court. The presentence investigation report did not make a factual finding or calculation to which the government could object. The defendant's argument on this issue is meritless.

A related argument is Mutuc's claim that the government failed to notify him of its intention to seek an adjustment under U.S.S.G. § 3C1.1. This is simply untrue. The government's intention to seek the adjustment is stated on the eighth page of the "Government's Version of the Offense" and within the presentence investigation report itself. (R. on Appeal 83.) Mutuc even objected to the recommendation for adjustment on the fourth page of his "Supplemental Objection to Government Presentence Report." (R. on Appeal 76.) Mutuc was clearly informed that a decision was contemplated. See *United States v. Jackson*, 32 F.3d 1101, 1106 (7th Cir. 1994) (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

Finally, Mutuc takes issue with the district court's failure to annunciate any specific instances of perjury when it applied the adjustment. Instead, the judge said:

> I have said in this case in the past that Mr. Mutuc is one of two things. He is either a liar or he has managed to convince himself of the truthfulness of what he says even though it is painfully obvious to everybody it is untrue.
>
>     . . . .
>
> But I don't see how you can read the transcript in this case and not come away with the unmistakable view that Mr. Mutuc didn't tell the truth. It's obvious that Mr. Mutuc didn't tell the truth. If there's anybody in the world who believes that he was telling the truth, it's only Mr. Mutuc.

(Sentencing Tr. 34-35.)

Mutuc did not object to the court's lack of specific findings at sentencing. He claims that he did object "on substantive and procedural grounds" by referring to his "Supplemental Objection to Government Presentence Report." This objection is insufficient. Because Mutuc did not object at sentencing, the issue is waived. See *United States v. Wade*, 114 F.3d 103, 106 (7th Cir. 1997); *United States v. Krankel*, 164 F.3d 1046, 1055 n.3 (7th Cir. 1998).

For the reasons stated above, we AFFIRM.

A true Copy:

      Teste:

 

 

_____
*Clerk of the United States Court of Appeals for the Seventh Circuit*