In the

# United States Court of Appeals

### For the Seventh Circuit

_____

No. 06-2674

UNITED STATES OF AMERICA,

*Plaintiff-Appellant*,

*v.*

AMEN E. JUMAH,

*Defendant-Appellee*.

_____

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 04 CR 237—**John W. Darrah,** *Judge*.

_____

ARGUED JANUARY 19, 2007—DECIDED JULY 16, 2007

_____

Before RIPPLE, KANNE and SYKES, *Circuit Judges*.

RIPPLE, *Circuit Judge*.  Amen E. Jumah was convicted by a jury of knowing possession of a listed chemical, knowing, or having reasonable cause to believe, that the chemical would be used to manufacture a controlled substance in violation of 21 U.S.C. § 841(c)(2). Mr. Jumah's primary defense was that he was acting under public authority when he committed the acts giving rise to the charge. At trial, Mr. Jumah requested that the jury be instructed that the Government had the burden of disproving his public authority defense beyond a reasonable doubt. The district court agreed to instruct the jury on the elements of the

public authority defense, but denied Mr. Jumah's request to further instruct the jury that the Government had the burden of disproving the defense beyond a reasonable doubt. Following the jury's guilty verdict, Mr. Jumah moved for a new trial on the ground that the jury had been instructed improperly with respect to the public authority defense. Acting without the benefit of the Supreme Court's most recent guidance, *see Dixon v. United States*, 126 S. Ct. 2437 (2006), the district court granted the motion; it determined that its denial of the requested instruction had been erroneous and that Mr. Jumah had suffered prejudice from that error. The Government has appealed the district court's decision. For the reasons set forth in this opinion, we reverse the judgment of the district court.

# I

## BACKGROUND

Mr. Jumah was a confidential source for the federal Drug Enforcement Administration ("DEA"). In that role, Mr. Jumah had assisted the DEA in a number of investigations into the trafficking of pseudoephedrine, a chemical used to produce methamphetamine. He had been compensated for his services. Eventually, the DEA found that Mr. Jumah no longer was providing useful information and, in late 2002, terminated his status as a confidential source. Mr. Jumah received his last payment from the DEA in March 2003. However, after that date, he continued to approach the DEA regarding payment for past information.

In February 2004, Mr. Jumah approached Ali Qasem about a potential pseudoephedrine deal. Mr. Jumah knew Qasem had been involved in pseudoephedrine trafficking

in California. However, he apparently was unaware that, in 2002, Qasem had pleaded guilty in a federal court in California for his participation in a conspiracy to distribute pseudoephedrine. Since his plea, Qasem had served as a confidential source for the DEA. When Mr. Jumah approached Qasem about a possible drug deal, unaware that Qasem was a confidential source, Qasem passed the information along to his handler, Agent Efren Lapuz, who, in turn, passed the information along to Agent James Jones in Chicago. Agent Jones was one of the DEA agents with whom Mr. Jumah had worked prior to his termination as a confidential source; indeed, Mr. Jumah had continued to contact him about payment for past information. Notably, Agent Jones had *not* asked Mr. Jumah to initiate any pseudoephedrine deals with Qasem or with anyone else during the period in question.

After confirming that the proposed deal was not between two "friendlies," i.e., two individuals working as informants, Agents Jones and Lapuz decided that Qasem should pursue the deal with Mr. Jumah on behalf of a fictitious methamphetamine producer. In early February, Qasem and Mr. Jumah met in Chicago to arrange the deal. As Qasem was traveling to Chicago for this meeting, Mr. Jumah had contacted Agent Jones regarding payment for past information, but had not mentioned his dealings with Qasem. When Qasem arrived in Chicago, he and Mr. Jumah had several meetings, some of which were recorded by the DEA. The meetings did not culminate in a deal, but arrangements were made to complete the transaction in early March.

On March 2, 2004, Mr. Jumah and Qasem arranged over the phone to meet that afternoon. After this call, Mr. Jumah contacted DEA Task Force Officer ("TFO") John Kosmow-

ski, with whom he had worked before, and informed TFO
Kosmowski that he might be meeting an individual
interested in purchasing pseudoephedrine. He did *not*
inform TFO Kosmowski that a meeting was scheduled
for that afternoon. Later that afternoon, Mr. Jumah and
Qasem arranged, by telephone, a time and place for their
meeting. Following this call, Mr. Jumah left a message with
TFO Kosmowski that he would be meeting with Qasem.
Mr. Jumah did not go into any details of the planned
meeting.

When Mr. Jumah met with Qasem that afternoon, Mr.
Jumah provided Qasem 1,016 pills containing pseudo-
ephedrine as a sample for Qasem's fictitious methamphet-
amine producer. Later that afternoon, Qasem contacted
Mr. Jumah over the telephone to arrange a deal to pur-
chase three hundred cases of pseudoephedrine pills. The
transaction was scheduled to take place that evening at
the Harrah's casino in Joliet, Illinois. DEA agents moni-
tored the activity by placing a recording device on Qasem
and by surveilling Mr. Jumah when he left Qasem at
the casino and took Qasem's car to obtain the pseudo-
ephedrine. When Mr. Jumah returned to the casino, he
told Qasem that the pseudoephedrine was in the trunk of
Qasem's car, and that he would bring the car by the front
of the casino to show Qasem the pseudoephedrine. Mr.
Jumah then returned to Qasem's car where he was ar-
rested. The "pseudoephedrine" found in Qasem's car
turned out to be rock salt.

After Mr. Jumah was arrested, he claimed that he was
acting on the authority of TFO Kosmowski and that he
had received the sample pseudoephedrine pills that he
had given Qasem from TFO Kosmowski. Mr. Jumah later
admitted that he had stolen the pills from the DEA several

months earlier. Mr. Jumah was charged with violation of 21 U.S.C. § 841(c)(2) for knowing possession of a listed chemical, knowing, or having reasonable cause to believe, that the chemical will be used to manufacture a controlled substance.

At trial, Mr. Jumah's principal defense was that he had been acting under public authority because he had been acting for the DEA in arranging the deal with Qasem. The Government objected to the submission of any instruction on public authority to the jury, but the district court overruled the objection because it believed that adequate evidence had been introduced to put the defense in issue. The Government then proposed the Seventh Circuit pattern jury instruction for the public authority defense, along with an additional instruction reciting that the Government did not bear the burden of disproving the defense. Although Mr. Jumah offered no instructions of his own, he objected to the pattern jury instruction; he maintained that the jury should be instructed on the defense in the same instruction that contained the elements of the offense. He also requested that the jury be instructed that the Government had the burden to disprove the defense beyond a reasonable doubt. The district court, however, rejected Mr. Jumah's requested instructions and took the view that the Government was not required to disprove the defense beyond a reasonable doubt. R.135-6 at 444. For reasons that are not clear from the record, the Government then withdrew its requested instruction that it did not bear the burden of disproving the defense. *Id.* at 457.

The jury was instructed on the elements of the offense with which Mr. Jumah was charged, the Government's burden with respect to proof of guilt and the elements of

the public authority defense. More precisely, the jury was instructed that, to find Mr. Jumah guilty, the Government was required to prove beyond a reasonable doubt that Mr. Jumah had "knowingly or intentionally possessed or distributed pseudoephedrine" and that he "possessed or distributed pseudoephedrine knowing or having reasonable cause to believe that it would be used to manufacture methamphetamine." *Id.* at 520. Immediately following this elements instruction, the court instructed the jury on the public authority defense. Following the Seventh Circuit pattern jury instruction nearly verbatim, the court stated, in pertinent part, that "[a] defendant who acts in reliance on public authority does not act knowingly."[1] *Id.* at 521. The jury returned a guilty verdict.

---

[1] The Seventh Circuit pattern jury instruction for the public authority defense, in whole, reads:

A defendant who acts in reliance on public authority does not act knowingly [or with the intent to (state intent requirement of statute, if any)], and should be found not guilty.

A defendant acts under public authority if:

(1) that defendant is affirmatively told that his/her conduct would be lawful;

(2) the defendant is told this by an official of the [United States] government; [and]

(3) the defendant actually relies on what the official tells him/her in taking the action[; and,

(4) the defendant's reliance on what he/she was told by the official is reasonable in light of the circumstances].

In considering whether a defendant actually relied on representations by an official that his/her conduct would

(continued...)

Following trial, Mr. Jumah filed a motion requesting a new trial or entry of a judgment of acquittal. He argued that the court had erred by failing to instruct the jury that the Government was required to disprove the public authority defense beyond a reasonable doubt. The court concluded that its earlier ruling was in error and that the Government was required to disprove the public authority defense beyond a reasonable doubt. The court further determined that the error was not harmless. Consequently, it granted Mr. Jumah's motion for a new trial.

## II

## DISCUSSION

### A.

The allocation of the burden of proof on affirmative defenses has been a vexing issue in the courts of appeals in recent times. The process has created, understandably, difficult problems for the district courts.

In *United States v. Talbott*, 78 F.3d 1183 (7th Cir. 1996) (per curiam), we held that, absent an act of Congress specifically allocating the burden of persuasion for an affirmative defense on the defendant, the burden rests on the

---

[1] (...continued)
[be] lawful, you should consider all of the circumstances of their discussion, including the identity of the official, the point of law discussed, the nature of what the defendant told, and was told by, the official, and whether that reliance was reasonable.

Seventh Circuit Pattern Criminal Jury Instr. 6.07 (1999).

Government to disprove the defense beyond a reasonable doubt once the defendant meets its burden of production to put the defense in issue. *Id.* at 1186. Adhering to our holding in *Talbott*, the district court concluded that, because no federal statute allocated the burden of persuasion for the public authority defense to the defendant, the Government was required to disprove Mr. Jumah's public authority defense beyond a reasonable doubt. The court therefore concluded that Mr. Jumah was entitled to an instruction to that effect and the earlier denial had been in error.

After the district court had ordered a new trial and had denied the Government's motion to reconsider, the Supreme Court decided *Dixon v. United States*, 126 S. Ct. 2437 (2006). The Court granted certiorari in *Dixon* to resolve a division of authority in the courts of appeals as to whether, absent an act of Congress on the issue, criminal defendants were required to prove by a preponderance of the evidence the elements of an affirmative defense that did not negate an element of the offense.[2] *Id.* at 2440. The Court held that there was no constitutional requirement that an affirmative defense that did not controvert an essential element of an offense be disproved beyond a reasonable

---

[2] Although the facts of *Dixon v. United States*, 126 S. Ct. 2437 (2006), related to the affirmative defense of duress, it is clear that the Court's holding was not limited to this defense. The Court cited our decision in *Talbott v. United States*, 78 F.3d 1183 (7th Cir. 1996) (per curiam), as an exemplar of cases in conflict with the decision of the Fifth Circuit. *Dixon*, 126 S. Ct. at 2440 n.1. *Talbott* itself did not involve the affirmative defense of duress. Rather, the defense raised in *Talbott* was self-defense. *Talbott*, 78 F.3d at 1185.

doubt. *Id.* at 2442. The Court further held that, absent evidence of contrary congressional intent in the structure or history of the statute, federal courts should presume that Congress intended that they follow established common law rules related to affirmative defenses when applying new criminal statutes. *Id.* at 2445-46. Thus, *Dixon* abrogates *Talbott* and establishes that, when a statute is silent on the question of affirmative defenses and when the affirmative defense does not negate an essential element of the offense, we must presume that the common law rule that places the burden of persuasion on the defendant reflects the intent of Congress.

## B.

Our immediate task is to determine: (1) whether the public authority defense negates an element of the charged offense that the Government must prove beyond a reasonable doubt and (2) whether Congress intended to alter the common law rules governing the public authority defense in prosecutions for violations of 21 U.S.C. § 841(c)(2).

### 1.

We first turn to whether the public authority defense negates an element of the offense with which Mr. Jumah was charged. Commentators have identified several categories of "defenses." These categories include failure of proof "defenses" and affirmative defenses based on justification and excuse. 2 Wayne R. LaFave, *Substantive Criminal Law* § 9.1(a) (2d ed. 2003) [hereinafter "LaFave"]. Failure of proof "defenses" do not provide an independent

basis for escaping criminal liability, but arise when a defendant introduces evidence that tends to show that the prosecution has failed to prove some element of the charged offense beyond a reasonable doubt, such as intent. *Id.* at § 9.1(a)(1). A failure of proof "defense" does not excuse conduct, but puts the prosecution to its burden of proving each element of an offense beyond a reasonable doubt. Affirmative defenses of justification and excuse, on the other hand, excuse conduct otherwise punishable without controverting the evidentiary sufficiency of the Government's proof of the elements of the underlying offense.[3] *See Dixon*, 126 S. Ct. at 2441. Affirmative defenses of justification and excuse do not negate criminal intent when the required mental state is that the defendant acted knowingly. *Id.* at 2442.

The public authority defense is an affirmative defense of excuse derived from the common law. *See United States*

---

[3] The principal distinction between justification and excuse lies in the concerns animating the affirmative defense. *See* 2 Wayne R. LaFave, *Substantive Criminal Law* § 9.1(a)(4) (2d ed. 2003) [hereinafter "LaFave"]. Justification affirmative defenses focus on special circumstances under which the harm caused by the defendant's actions is outweighed by the risk of a greater harm. *Id.* § 9.1(a)(3). Such defenses include self-defense, defense of others and necessity. *See* Paul H. Robinson, *Criminal Law Defenses: A Systematic Analysis*, 82 Colum. L. Rev. 199, 242 (1982) [hereinafter "Robinson"]. Affirmative defenses of excuse, on the other hand, rest on the conclusion that, because of a particular disability or impairment, it is inappropriate to hold the defendant criminally responsible for the otherwise unlawful conduct. *See* LaFave § 9.1(a)(4). Duress, somnambulism, infancy and mistake are all examples of defenses grounded in excuse. *See* Robinsion at 242-43.

*v. Pitt*, 193 F.3d 751, 756 (3d Cir. 1999). It is grounded in the principle that prosecuting an individual who acts in reliance upon official statements that one's conduct is lawful offends due process.[4] Like the statute involved in

---

[4] A closely related affirmative defense is the defense of entrapment by estoppel, an affirmative defense also grounded in the Due Process Clause of the Fifth Amendment. Entrapment by estoppel provides an affirmative defense for action taken in reasonable reliance on assurances by government officials that the conduct is legal. *See United States v. Howell*, 37 F.3d 1197, 1204 (7th Cir. 1994). We have questioned the meaningfulness of the difference between the two defenses. *See United States v. Baker*, 438 F.3d 749, 753 (7th Cir. 2006). To the extent the distinction is meaningful, the main difference is that, in the case of the public authority defense, the defendant engages in conduct at the request of a government official that the defendant knows to be otherwise illegal, while in the case of entrapment by estoppel, because of the statements of an official, the defendant believes that his conduct constitutes no offense. *See* 53 Am. Jur. Proof of Facts 3d 249 *Proof of Defense of Entrapment by Estoppel* § 20 (1999). Neither defense implicates the defendant's mens rea, except in the rare case in which mistake of law negates the required mental state of the offense. In such case the defense of entrapment by estoppel also could constitute a failure of proof "defense" because the government agent's misstatement of the law would lead the defendant to believe that there was nothing criminal about his conduct under any circumstances. *See generally Cox v. Louisiana*, 379 U.S. 559, 571 (1965) (holding that it would offend due process to permit the state to sanction individuals from demonstrating in an area where police told them they could hold their demonstration); *Raley v. Ohio*, 360 U.S. 423, 437-39 (1959) (holding that it would offend due process to permit criminal prosecution of an individual for invoking a

(continued...)

*Dixon*, the required mental state for an offense under 21 U.S.C. § 841(c)(2) is that the defendant act "knowingly." Generally, the prosecution meets its burden with respect to this mental state when it proves beyond a reasonable doubt that the defendant had knowledge of the facts constituting the offense. *See Dixon*, 126 S. Ct. at 2441. As noted above, common law affirmative defenses of excuse do not controvert this mental state. *Id.* at 2442. Thus, the public authority defense, as an affirmative defense of excuse, does not controvert an essential element of the offense with which Mr. Jumah was charged and does not, of its own force, place the burden on the Government to disprove the defense beyond a reasonable doubt in order to prove his guilt.

At common law, the burden of proof for all affirmative defenses of justification and excuse rests on the defendant. *Id.* at 2443 (citing *Patterson v. New York*, 432 U.S. 197, 202 (1977)). Because the public authority defense is an affirmative defense based on excuse, we must conclude that Congress intended the burden to rest on the defendant to prove the defense by a preponderance of the evidence.

## 2.

Mr. Jumah was charged with violating 21 U.S.C. § 841(c)(2). Mr. Jumah points to nothing in the structure

---

[4] (...continued) privilege against self-incrimination in hearings before a state legislative commission after having been assured of his right to do so by the chairman, members and counsel of the commission); *Howell*, 37 F.3d at 1204 (stating that the defense of entrapment by estoppel is grounded in the Due Process Clause of the Fifth Amendment).

or history of 21 U.S.C. § 841(c)(2) that suggests that Congress intended to depart from the common law rules related to affirmative defenses. Thus, we must presume that Congress intended the federal judiciary to follow established common law rules with respect to affirmative defenses raised against a charged violation of 21 U.S.C. § 841(c)(2).

### C.

Ordinarily, we review a district court's decision regarding a motion for a new trial for an abuse of discretion. *United States v. McGee*, 408 F.3d 966, 979 (7th Cir. 2005). However, because the Government withdrew its proposed jury instruction on the burden of proof and did not argue, in its opposition to Mr. Jumah's motion for a new trial, that the burden of proof on the public authority affirmative defense rests on the defendant, it forfeited this argument, and, consequently, our review is limited to plain error. *See United States v. Linwood*, 142 F.3d 418, 422 (7th Cir. 1998). Under the plain error standard, the party asserting the error bears the burden of persuasion on the following points: (1) that there is error, (2) that the error is plain, and (3) that the error "affects substantial rights." *See United States v. Olano*, 507 U.S. 725, 732-34 (1993). Further, we may not exercise our discretion to consider forfeited error "unless the error 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" *Id.* at 732 (quoting *United States v. Young*, 470 U.S. 1, 15 (1985)) (some internal quotation marks omitted).

Our analysis in the preceding section establishes that the district court's holding, in reliance on our decision in *Talbott*, that the Government had the burden of disprov-

ing Mr. Jumah's public authority defense beyond a rea-
sonable doubt was error. Given the Government's with-
drawal of its tendered instruction on the allocation of the
burden of proof on the defense of public authority, we
must determine, however, whether this error was *plain*.
When, at the time of the district court proceedings, the
prevailing circuit law was settled and that law is clearly
contrary to the law at the time of appeal, "it is enough that
the error be 'plain' at the time of appellate consideration."
*Johnson v. United States*, 520 U.S. 461, 468 (1997); *United
States v. Vincent*, 416 F.3d 593, 603 (7th Cir. 2005). In light
of the intervening Supreme Court decision in *Dixon*, the
district court's error was plain.

Turning to the third prong of our plain error analysis, an
error affects a party's substantial rights if it is prejudicial in
the sense that it affects the outcome of the proceedings.
*Vincent*, 416 F.3d at 603. Here, the prejudicial effect of the
error is clear. At trial, the district court stated that the
Government was not required to disprove the public
authority defense beyond a reasonable doubt. In response
to Mr. Jumah's motion for a new trial, the court later
reconsidered this conclusion and held that this ruling had
been in error and that the Government was required to
disprove the defense beyond a reasonable doubt. This later
ruling, not the original ruling at trial, was in error. The
district court would not have granted Mr. Jumah's motion
for a new trial had it had the benefit of the Supreme
Court's decision in *Dixon*. This error prejudiced the Gov-
ernment by depriving it of a jury verdict rendered by a
properly instructed jury.

If an error is plain and it affects a party's substantial
rights, we shall exercise our discretion and reverse the
district court's decision if "the error 'seriously affect[s] the
fairness, integrity or public reputation of judicial proceed-

ings.' " *Olano*, 507 U.S. at 732 (quoting *Young*, 470 U.S. at 15) (some internal quotation marks omitted). Here, permitting the district court's decision to grant a new trial to stand would result in a new trial even though the instructions given in the first trial were not erroneous. Allowing a new trial following an error-free trial based solely on plain error in granting the new trial compromises the "integrity or public reputation" of the judicial proceedings and invites justified public scorn. *Johnson*, 520 U.S. at 470 (quoting Roger J. Traynor, *The Riddle of Harmless Error* 50 (1970)).

### D.

Mr. Jumah further submits that, even if *Dixon* controls this case, he was entitled to a new trial. More precisely, Mr. Jumah claims that the district court failed to instruct the jury that the defendant bears the burden of proving the affirmative defense of public authority by a preponderance of the evidence. Left without any particular guidance with respect to the standard of proof on the affirmative defense, the jury may have concluded, submits Mr. Jumah, that he had to prove that defense beyond a reasonable doubt. The jury must have interpreted the instructions in this way, he continues, because the only instructions regarding burden of proof placed the burden on the Government to prove the elements of the offense beyond a reasonable doubt.

Mr. Jumah did not request an instruction stating that the burden was on him to prove the defense by a preponderance of the evidence. We therefore must review this contention for plain error. *See United States v. Mutuc*, 349 F.3d 930, 935 (7th Cir. 2003). Accordingly, Mr. Jumah must establish that failure to give the instruction he now re-

quests was (1) error, (2) that was plain and (3) that such failure affected his substantial rights. *See Olano*, 507 U.S. at 732-34.

We shall assume, *arguendo*, that, on the basis of the foregoing discussion, the first two parts of the plain error analysis are met.[5] In short, we shall assume that failure to

---

[5] We shall assume that the district court's failure to instruct the jury that Mr. Jumah had the burden to prove the public authority defense by a preponderance of the evidence was error. Although "[a] defendant is entitled to have the jury consider any theory of defense supported by law and evidence," he is not entitled to any particular jury instruction regarding that theory. *United States v. Mutuc*, 349 F.3d 930, 935 (7th Cir. 2003); *see also United States v. Irorere*, 228 F.3d 816, 825 (7th Cir. 2000) (applying the same factors in the context of plain error review). The district court need not submit a particular theory of the defense instruction "if its essential points are covered in another instruction." *United States v. Manjarrez*, 258 F.3d 618, 626 (7th Cir. 2001).

The instruction that Mr. Jumah now contends that the district court should have given the jury is a correct statement of the law under the Supreme Court's decision in *Dixon*. As our earlier discussion demonstrates, *Dixon* makes clear that the defendant has the burden of establishing the public authority defense by a preponderance of the evidence. *See Dixon*, 126 S. Ct. at 2447-48 (holding that, when Congress is silent on the issue of the burden of proof applicable to a common law affirmative defense that does not negate an element of the offense, we presume Congress intended the defendant to bear the burden of proof of the defense by a preponderance of the evidence).

We also shall assume, for purposes of the present analysis, that the district court correctly concluded that the public

(continued...)

give the instruction allocating the burden of proof on the public authority instruction was error and that the error was plain. We shall focus on whether the absence of the instruction Mr. Jumah requests affected his substantial rights. Mr. Jumah must show "'a reasonable probability that, but for [the error claimed], the result of the proceeding would have been different.'" *United States v. Dominguez Rodriguez*, 542 U.S. 74, 81-82 (2004) (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)) (stating that *Bagley* provides a sensible model for determining whether error "affects substantial rights" when applying *Olano*).

To assist the reader, we pause to set out the instructions on the elements of the offense and the affirmative defense of public authority as given by the district court:

> The defendant is charged in the indictment with knowingly and intentionally possessing and distributing a listed chemical, namely, approximately 1,016 tablets of pseudoephedrine, a List 1 chemical, knowing and having reasonable cause to believe the listed chemical would be used to manufacture a controlled substance, namely, mixtures containing a detectable amount of methamphetamine, a Schedule II narcotic drug controlled substance.
>
> To sustain the charge of possessing or distributing pseudoephedrine, the government must prove the following propositions:

---

[5] (...continued)
authority defense was fairly raised by the evidence at trial. Likewise, the requested instruction was not part of the charge to the jury, and no other instruction addresses Mr. Jumah's burden with respect to the public authority defense.

First, the defendant knowingly or intentionally possessed or distributed pseudoephedrine; second, the pseudoephedrine is a listed chemical; and [] third, the defendant possessed or distributed pseudoephedrine knowing or having reasonable cause to believe that it would be used to manufacture methamphetamine.

It does not matter whether [the] defendant knew the pseudoephedrine was a listed chemical. It is sufficient [that] the defendant knew or had reasonable cause to believe that it would be used to manufacture methamphetamine or some other prohibited drug.

If you find from your consideration of all of the evidence that each of these propositions has been proven beyond a reasonable doubt, then you should find the defendant guilty.

A defendant who acts in reliance on public authority does not act knowingly and should be found not guilty.

A defendant acts under public authority if, one, the defendant is affirmatively told that his conduct would be lawful; two, the defendant is told this by an official of the government; three, the defendant actually relies on what the official tells him in taking the action; and, four, the defendant's reliance on what he was told by the official is reasonable in light of the circumstances.

In considering whether defendant—a defendant actually relied on representations by an official that his conduct would be lawful, you should consider all of the circumstances of their discussion, including the identity of the official, the point of law discussed, the nature of what the defendant was told,—let me say that again.

In considering whether a defendant actually relied on representations by an official that his conduct would be lawful, you should consider all of the circumstances of their discussion, including the identity of the official, the point of law discussed, the nature of what the defendant told and was told [by] the official, and whether that reliance was reasonable.

R.136-5 at 520-22.

As Mr. Jumah correctly points out, the district court did not instruct the jury about the allocation of the burden of proof for the public authority defense. He submits that the absence of such an instruction worked to his prejudice because, in its absence, the jury not only may have placed the burden of proof upon him but also may have assumed that he had to prove that defense beyond a reasonable doubt.

We cannot accept this argument. The wording and the placement of the public authority defense instruction makes it very likely that the jury assumed that the Government had the burden of disproving the public authority defense. Notably, the only instruction relating to burden of proof addressed the Government's burden to prove each element of the offense beyond a reasonable doubt. Among the elements instructions was the admonition that the Government was required to prove that Mr. Jumah had acted knowingly. The public authority instruction followed immediately the elements instruction; it stated that Mr. Jumah could not have acted knowingly if he had acted on the reasonable belief, induced by the representation of a government official, that he was acting under public authority.

After *Dixon*, the court's instructions would not be correct. *Dixon* makes clear that the public authority affirma-

tive defense does not negate the knowledge element of the offense, *see Dixon*, 126 S. Ct. at 2441-42, and that the defendant must establish that defense by a preponderance of the evidence, *see id.* at 2447-48. Nevertheless, a jury faithfully following the instructions, *as given by the district court*, would have understood, in all likelihood, that the Government had the burden of disproving the affirmative defense of public authority in order to prove, beyond a reasonable doubt, that the knowledge element of the offense was established. In short, Mr. Jumah received, in all likelihood, an unwarranted benefit from the court's instructions. Indeed, given the evidence of record, if the district court had had the benefit of *Dixon*, it well might have determined that Mr. Jumah had not submitted sufficient evidence to place this issue before the jury. We must conclude that there is no reasonable probability that the result of the proceeding would have been different had the jury been instructed in accordance with the principles now established by *Dixon*. *Dominguez Rodriguez*, 542 U.S. at 81-82 (citing *Bagley*, 473 U.S. at 682). Therefore, Mr. Jumah has not met his burden of demonstrating that the failure to give the requested instruction affected his substantial rights.

## Conclusion

For the reasons set forth in this opinion, we hold that it was plain error for the district court to grant Mr. Jumah a new trial. Further, under the circumstances presented here, it was not plain error for the district court to fail to instruct the jury that the burden rested on Mr. Jumah to establish the elements of the public authority defense by a preponderance of the evidence. Accordingly, the deci-

sion of the district court is reversed and remanded with instructions to reinstate the jury's verdict.

REVERSED and REMANDED with INSTRUCTIONS

A true Copy:

Teste:

_____

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*