**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Dennis Lee DAVIS, Defendant–Appellant.**

No. 94–10560.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 8, 1995.

Decided Feb. 14, 1996.

312

John C. Lambrose and Janet S. Bessemer, Assistant Federal Public Defenders, Las Vegas, Nevada, for defendant-appellant.

Anthony S. Murry, Assistant United States Attorney, Las Vegas, Nevada, for plaintiff-appellee.

Before WALLACE and THOMPSON,
Circuit Judges, and REA, District Judge.*

## OPINION

DAVID R. THOMPSON, Circuit Judge:

Dennis Lee Davis appeals his jury conviction for distribution of methamphetamine, in violation of 21 U.S.C. § 841(a)(1); conspiracy to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 846; and use of a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1).

Davis contends the district court erred by denying his motion to suppress evidence seized during the search of his apartment. He claims the search was conducted before agents obtained a search warrant. He further contends the district court improperly instructed the jury on his "government authorization" theory of defense. Finally, he argues there was insufficient evidence to support his conviction for use of a firearm during and in relation to a drug trafficking offense.

We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

## FACTS

At trial, the evidence showed that a confidential informant told DEA Special Agent Richard McConnell that Davis was selling large amounts of methamphetamine. Agent McConnell instructed the confidential informant to arrange a meeting between himself and Davis.

Agent McConnell, acting undercover, arranged to meet with Davis at a casino. At the meeting, Davis was to deliver a pound of methamphetamine in exchange for $11,000.

* The Honorable William J. Rea, District Judge for the Central District of California, sitting by desig-

When leaving his home to make the delivery, Davis showed a .25 caliber pistol to his codefendant, Javier Lopez. Davis testified he showed the firearm to Lopez so that Lopez would not attempt to take advantage of him during the methamphetamine transaction. Davis placed the firearm in the car and drove to the casino to deliver the methamphetamine.

Davis arrived at the casino with his codefendants, Lopez, and Juan Jesus Villagran. Davis retrieved a package of methamphetamine from the car and handed the package to Agent McConnell. Agents then arrested Davis, Lopez, and Villagran. Agents searched Davis's car and found the .25 caliber pistol under Davis's seat. Later that day, agents obtained a search warrant and searched Davis's apartment.

At trial, Davis asserted he was working as a confidential informant at the time he delivered the methamphetamine to Agent McConnell. Davis testified he had been working with Detective Blake Quackenbush of the Las Vegas Metropolitan Police Department. Quackenbush, however, testified that he had instructed Davis not to participate in any criminal activity without police supervision and that he had not authorized Davis's methamphetamine transaction with Agent McConnell. The jury found Davis guilty on all counts charged in the indictment.

## DISCUSSION

A. Motion to Suppress

After arresting Davis, agents obtained a search warrant and searched Davis's apartment. Davis moved to suppress all evidence seized during the search because, Davis contends, the agents searched his apartment prior to obtaining the search warrant. For this argument, Davis relies on the testimony of his brother, Charles, who was present at the apartment during the search.

[1] The agents did not have the search warrant in hand at the time they searched Davis's apartment. The search, however, would be valid if the warrant had

nation.

been issued before the search took place. *United States v. Woodring,* 444 F.2d 749, 751 (9th Cir.1971).

[2] The magistrate judge signed the search warrant at 6:10 p.m. Agent McConnell testified that upon receiving the signed search warrant he immediately telephoned DEA Agent Tim Landrum and advised him the search could begin. Agent Landrum testified that the warrant was executed at 6:15 p.m. This was corroborated by the time recorded in his report.

Davis's brother, Charles, testified that agents stormed into the apartment, without knocking or identifying themselves, and with guns drawn, prior to 6:00 p.m. This testimony, however, was not corroborated.

[3] Moreover, the magistrate judge found, and the district court agreed, that Charles's testimony was less credible than that of the agents who conducted the search. Charles was not looking at a clock when the agents entered the apartment and began the search. His time estimate was based solely on the fact that he was watching television news when the warrant was executed. The magistrate judge noted that local television stations broadcast news "at least until 6:30 p.m." Charles's testimony did not effectively contradict the testimony of the agents.

[4] We conclude the district court did not clearly err in finding that the warrant was issued before the search.

## B. Defense Theory Instruction

Davis's theory of defense was that he mistakenly believed he was acting as a confidential informant for the Las Vegas Metropolitan Police Department when participating in the drug deal with Agent McConnell. The district court instructed the jury:

> If a person engages in conduct violative of a criminal statute at the request of a government enforcement officer, with the reasonable belief that he or she is acting as an authorized government agent to assist in law enforcement activity, then that person may not be convicted of violating the criminal statute, because the requisite criminal intent is lacking. The government must prove beyond a reasonable doubt that De-

fendant Dennis Lee Davis did not have a reasonable belief that he was acting as an authorized government agent to assist in law enforcement activity at the time of the offenses charged in the indictment.

█ Davis contends the language of this jury instruction was inadequate to convey his government authorization theory of defense because the district court declined to substitute the words "reasonable, even if mistaken, belief" for the phrase "reasonable belief."

The district court instructed the jury using the precise language we suggested in *United States v. Mason,* 902 F.2d 1434, 1440–41 (9th Cir.1990). Davis attempts to distinguish *Mason* on the ground that the issue in *Mason* was whether the agreement between the government and the defendant had actually terminated. This is a meaningless distinction. Both Davis and the defendant in *Mason* asserted their mistaken belief that they were operating under government authorization. *Mason* is directly on point.

[5] The district court also gave Davis ample opportunity to testify, and Davis's attorney was free to argue to the jury that Davis's belief was reasonable, even if mistaken. We conclude, therefore, that the district court did not err by refusing to include the specific language requested by Davis.

## C. Sufficiency of the Evidence

█ In challenging his conviction for violating 18 U.S.C. § 924(c)(1), Davis contends the government presented insufficient evidence to establish that he "used" the firearm "in relation to" the underlying drug offense.

█ We have held that possession of a firearm, if used to embolden or protect a defendant, constitutes use of a firearm under section 924(c)(1), even if the defendant does not display or refer to the firearm. *See, e.g., United States v. Torres–Medina,* 935 F.2d 1047, 1050 (9th Cir.1991); *United States v. Torres–Rodriguez,* 930 F.2d 1375, 1385 (9th Cir.1991). The Supreme Court, however, recently held the term "use" requires proof that "the defendant actively employed the firearm during and in relation to the predicate crime." *Bailey v. United States,* —— U.S. ——, ——, 116 S.Ct. 501, 509, 133

L.Ed.2d 472 (1995). The mere possession or presence of a firearm which serves to embolden or protect a defendant is not sufficient to constitute use of the firearm. *Id.* at —— ——, 116 S.Ct. at 506–07. A defendant does use a firearm, however, if he displays or brandishes it. *Id.* at ——, 116 S.Ct. at 507.

In the present case, the evidence showed that, when leaving his home to deliver the methamphetamine, Davis picked up a firearm, showed the firearm to Lopez, and put it in his pocket. After arresting Davis, agents found the firearm in the car, under Davis's seat. Davis himself provided the most damaging evidence. He testified:

> I grabbed a .25 caliber automatic handgun from the coffee table. I showed it to Lopez, and I showed it to Lopez for a reason so he'd know I would be armed, so he wouldn't be able to take advantage of me for no matter what was gonna happen. I knew there was gonna be a dope deal go down that day, so I didn't know what was gonna happen. I didn't know if both sides were gonna be mad at me, one side was gonna be mad. I wasn't sure what was gonna happen. I took the handgun. As soon as I got into my car, I tucked it way back under my seat. You know, I done showed my purpose.

■ This evidence establishes that Davis actively employed the firearm during and in relation to the drug offense. Davis did not passively possess the firearm. He brandished it for the purpose of warning Lopez not to take advantage of him during the delivery of the methamphetamine. This constituted use of the firearm. *See id.*

■ It is undisputed that Davis did not show the firearm to the proposed buyer, Agent McConnell. He showed the gun to Lopez. Lopez, however, was a direct participant in the methamphetamine transaction and Davis testified he showed Lopez the firearm to intimidate Lopez during the "dope deal." Thus, the display of the firearm served to facilitate the drug trafficking offense. *See Smith v. United States,* 508 U.S. 223, 238–39, 113 S.Ct. 2050, 2059, 124 L.Ed.2d 138 (1993).

■ We conclude the government presented sufficient evidence to establish that Davis used the firearm during and in relation to the underlying drug offense, in violation of 18 U.S.C. § 924(c)(1).

AFFIRMED.